# Exhibit 1

# EXHIBIT 3



# Marion County Coroner's Office
## 521 W McCarty St, Indianapolis, IN 46225
## Tel: (317) 327-4744; Fax: (317) 327-4563

Decedent: Herman Whitfield III

Age: 39 years

Sex/Race: Male/Black

Performed By:  Zachary O'Neill D.O.

Case: 22-1635

Date: 4/26/2022

Time: 0850 hours

Performed for: MCCO

Persons Present: Autopsy Technician Abu Elkhazeen; Marilyn Schaler of the Crime Lab; Michael Duke of the Indianapolis Metropolitan Police Department

Identification: Visual

☒ **Autopsy**          ☐ **External Exam**

## CAUSE OF DEATH

Cardiopulmonary arrest in the setting of law enforcement subdual, prone restraint, and conducted electrical weapon use

## OTHER CONTRIBUTING CONDITIONS

Morbid obesity; Hypertensive cardiovascular disease

## MANNER OF DEATH

Homicide

_____          7/19/2022
Zachary O'Neill D.O., Forensic Pathologist                Date

Decedent: Herman Whitfield III                                                                Case: 22-1635

## ANATOMIC/CLINICAL FINDINGS

I. Hypertensive cardiovascular disease.
    A. History of hypertension.
    B. Cardiac enlargement (510 grams) with left ventricular hypertrophy.

II. Morbid obesity (Body mass index = 48.7).

III. Hepatic steatosis, liver.

IV. Blunt force injuries of head and neck.
    A. Abrasion of forehead.
    B. Laceration of lower lip.
    C. Subcutaneous and intramuscular hemorrhage of neck.
    D. No fracture of hyoid bone or thyroid cartilage.
    E. No facial or conjunctival petechiae.

V. Blunt force injuries of torso.
    A. Scattered abrasions and superficial lacerations of torso.

VI. Blunt force injuries of extremities.
    A. Scattered contusions and abrasions of extremities.
    B. Subcutaneous hemorrhages of right forearm, right wrist, left wrist, and left ankle.
        1. Status post restraint with handcuffs.

VII. Status post conducted electrical weapon deployment.
    A. Probe barb in left side of abdomen.
    B. Electrical wires present in body bag.

VIII. Toxicological testing positive for cannabinoids (marijuana).
    A. See separate Toxicology Report.

Decedent: Herman Whitfield III                                                                 Case: 22-1635

## IDENTIFICATION

The body arrives in a body bag sealed with red lock "003834". The body is identified by an identification band on the right 1st toe bearing the decedent's name. The body was positively identified visually by family.

## CLOTHING AND PERSONAL EFFECTS

The body is unclad when initially viewed. No clothing or personal effects accompany the body.

## EVIDENCE OF MEDICAL THERAPY

An oral airway, secured with tube tamer, is in place. Defibrillator pads and a CPR assist device are in place on the chest. Electrocardiogram leads (x10) are in place. An intraosseous catheter is in the right shoulder. A pulse oximeter sensor is on the 2nd digit of the right hand. An intravenous catheter is in the left antecubital fossa.

## EXTERNAL EXAMINATION

The body is that of a normally developed and obese, dark complexioned man appearing consistent with the listed age of 39 years. The length is 75 inches, and the weight is 389.5 pounds as received. The body is well preserved, cold, and has not been embalmed. Rigidity is mildly developed in the jaw and extremities. Lividity is pink-purple, nonblanching, and in a posterior distribution. A portion of copper-colored wire is present along the right shoulder. A portion of copper-colored wire is present between the legs.

The scalp is covered with braided black hair measuring up to 14 ½" in length. Facial hair consists of a black beard. The ears are normally formed and without drainage. The irides are brown, the corneas clear, and the bulbar and palpebral conjunctivae free of petechiae. The sclerae are white and congested with focal drying artifact. The nose is intact, and the nares are clean and unobstructed. The lips are normally formed. The teeth are natural and in fair condition. The neck is symmetrical and the trachea is midline.

The chest is normally formed, symmetrical, and without palpable masses. White cotton-like material is present within the right axilla and within the folds of the right side of the chest.

The abdomen is moderate to markedly protuberant and soft. A probe barb is in the left side of the abdomen and is described in more detail in the "EVIDENCE OF INJURY" section below. No masses are palpable.

The external genitalia are those of a circumcised man with both testes descended into the scrotum. Foliage is present within the pubic hair and around the genitalia.

The back is straight and symmetrical. The anus is atraumatic.

The upper extremities are normally formed and symmetrical with no clubbing or edema. No track marks or ventral wrist scars are noted. The hands are covered by paper evidence bags. The fingernails are clean and extend up to 1/16" beyond the fingertips.

The lower extremities are normally formed and have no edema, amputations, or deformities. On the left calf is a 5 x 3" area of dirt. The toenails are clean.

Decedent: Herman Whitfield III                                              Case: 22-1635

BODY MARKINGS (SCARS AND TATTOOS):

Scars:  None.

Tattoos: None.

## EVIDENCE OF INJURY

BLUNT FORCE INJURIES OF HEAD AND NECK:
On the left side of the forehead, above the left eyebrow, is a 5/8 x 3/8" red-brown abrasion.  On the right side
of the lower lip is a 3/8 x ¼" full-thickness laceration.  Reflection of the scalp reveals no hemorrhage.
Opening of the cranial vault reveals no intracranial or intraparenchymal hemorrahge of the brain.

An anterior neck dissection reveals a 6 x 5 cm area of hemorrahge within the right sternocleidomastoid at the
junction of the right clavicle. Incisions into the muscle demonstrate intramuscular hemorrhage.  A 7 x 4 cm
area of hemorrhage is within the subcutaneous tissue of the base of the left side of the neck, deep to the mid
portion of the left clavicle.  The hyoid bone is intact.  There are no fractures of the thyroid cartilage.

A subcutaneous dissection of the back of the neck reveals no areas of subcutaneous hemorrhage.

BLUNT FORCE INJURIES OF TORSO:
On the right side of the chest a ½ x ½" faint linear red abrasion.  On the mid chest is a 5/16 x 1/16" linear red
abrasion.  On the right side of the upper abdomen/right flank is a 2 ½ x 1/16" curvilinear red-brown abrasion.
On the left side of the lower abdomen are a 1 ¾ x 1/16" linear red abrasion and a 1 x 1/16" slightly
curvilinear, red-brown abrasion.  On the left side of the mid to lower back is a ¾ x 1/16", horizontally-
oriented, linear, superficial laceration.  On the right side of the lower back is a 3 ½ x 1/8", vertically-
oriented, linear, superficial laceration.

A subcutaneous dissection of the back, extending from the base of the head down to and involving both
buttocks, with exposure of the shoulders and flanks, reveals no areas of subcutaneous hemorrahge.

Internal examination of the torso reveals no injuries.

BLUNT FORCE INJURIES OF EXTREMITIES:
Right Upper Extremity:
On the anterior right forearm is a 2 x 1" group of punctate ecchymoses.

An incision is made from the right shoulder to the right wrist.  Examination of the subcutaneous tissues of
the right upper extremity reveals a 3 x 2 cm area of hemorrahge within the anteromedial right wrist, a 4 x 2
cm area of hemorrhage within the anteromedial right forearm, and a 6 x 4 cm area of hemorrahge within the
proximal to mid anterior right forearm.

Left Upper Extremity:
On the posteromedial left forearm is a 2-1/8 x 1" ovoid, purple contusion.  On the posteromedial left wrist is
a 1 ¼ x ¼" purple contusion that surrounds a 3/16" skin tear.

Decedent: Herman Whitfield III                                                    Case: 22-1635

An incision is made from the left shoulder to the left wrist. Examination of the subcutaneous tissues of the left upper extremity reveals a 2 x 1 cm area of hemorrhage within the lateral left wrist and a very focal hemorrhage within the anterior left wrist.

Right Lower Extremity:
There are no injuries of the right lower extremity.

An incision is made from the right buttock to the right ankle. Examination of the subcutaneous tissue of the right lower extremity reveals no hemorrhage.

Left Lower Extremity:
Just above the left knee is a ¼" linear red abrasion. On the medial left knee are a 1 ½ x 1/16" linear red abrasion and a 1 x ¼" linear red abrasion.

An incision is made from the left buttock to the left ankle. Examination of the subcutaneous tissue of the left lower extremity reveals a 6 x 5 cm area of hemorrhage within the lateral left ankle. No other injuries are seen.

## CONDUCTED ELECTRICAL WEAPON DEPLOYMENT
Within the left side of the lower abdomen, located 32" below the top of the head and 6" left of the anterior midline is a probe barb. The barb is lodged within the skin and extends approximately ¼" into the subcutaneous tissue. An incision into the lodgment side demonstrates hemorrhage.

Within the left side of the lower abdomen, located 33 ¾" below the top of the head and 4 ½" left of the anterior midline is a 1/16" punctate and slightly dimpled area. An incision into this area reveals no hemorrahge (Comment: This area was thought to have possibly been the location of the second barb however after incision it is unlikely that this area represents an injury associated with a conducted electrical weapon).

## INTERNAL EXAMINATION

### GENERAL DESCRIPTION:

The body is opened by a standard Y-shaped thoraco-abdominal incision. The body cavities have no hemorrhage or abnormal fluid. The serosal surfaces are smooth, glistening, and without adhesions. The organs are normally located. The diaphragm is intact. The abdominal fat layer measures up to 12 cm in thickness.

### CARDIOVASCULAR SYSTEM:

The heart weighs 510 grams and is enlarged. It has a smooth, glistening epicardium. The coronary arteries have a normal origin and distribution with right dominance and no significant atherosclerotic stenosis. The myocardium is red-brown, firm, and uniform without focal fibrosis, softening, or hyperemia. The ventricles are not dilated. The left ventricle is thickened. The right ventricle, left ventricle, and interventricular septum measure 0.5 cm, 2.0 cm, and 2.0 cm, respectively. The endocardium is intact, smooth, and glistening. The cardiac valve leaflets are of normal number, pliable, intact, and free of vegetations. The aorta follows its usual course, is of normal caliber, and has minimal atherosclerotic changes. There are no vascular anomalies or aneurysms. The vena cavae and pulmonary arteries are without thrombus or embolus.

Page 5 of 10

Decedent: Herman Whitfield III                                                    Case: 22-1635

## RESPIRATORY SYSTEM:

The right and left lungs weigh 800 and 800 grams, respectively, and have the usual lobation. The pleural surfaces are smooth and glistening; the lungs have minimal anthracotic pigment. The lungs are well expanded. The parenchyma is pink-red and congested. There are no areas of induration, consolidation, hemorrhage, infarct, tumor, enlargement of airspaces, or gross scarring. The bronchi focally contain hemorrhage.

## HEPATOBILIARY SYSTEM:

The liver weighs 2680 grams. The intact capsule is smooth and glistening. The parenchyma is red-slightly yellow, congested, and uniform without mass, hemorrhage, or palpable fibrosis. The gallbladder contains an estimated 20 ml of bile and cholesterolosis but no stones. The wall is not thickened. The pancreas has a normal size, shape, and lobulated structure. The parenchyma is pink-tan, firm, and uniform.

## GENITOURINARY SYSTEM:

The right and left kidneys weigh 170 and 190 grams, respectively, and have a normal shape and position. The cortical surfaces are smooth. The kidneys have the usual corticomedullary structure without tumors or cysts. The pelves and ureters are not dilated or thickened. The bladder contains 100 ml of clear yellow urine. The mucosa is intact, and the bladder wall is not hypertrophied.

The prostate gland is of average size and grossly unremarkable. The testes are without hemorrhage or tumor.

## HEMOLYMPHATIC SYSTEM:

The spleen weighs 310 grams. The capsule is smooth and intact. The parenchyma is maroon, moderately soft, and uniform. There is no enlargement of the lymph nodes in the neck, chest, or abdomen.

## ENDOCRINE SYSTEM:

The thyroid gland is not enlarged, and the lobes appear symmetrical. The parenchyma is uniform, firm, and red-brown. The adrenal glands have the usual size and shape. The cortices are thin, uniform, and yellow and there is no hemorrhage or tumor. The pituitary gland is grossly unremarkable.

## GASTROINTESTINAL SYSTEM:

The esophagus and gastroesophageal junction are unremarkable. The stomach contains approximately 5 ml of watery brown liquid without visible pill or pill residue. The gastric and duodenal mucosae are intact and unremarkable. The small and large intestines and appendix are unremarkable to inspection and palpation. The bowels are opened along their entire length. There is focal erythema within the cecum but otherwise the bowels are unremarkable.

## NECK:

Decedent: Herman Whitfield III                                                    Case: 22-1635

See "EVIDENCE OF INJURY" section above. The tongue has no hemorrhage. The hyoid bone and the cartilaginous structures of the larynx and trachea are normally formed and without fracture. The airway is unobstructed, lined by smooth, pink-tan mucosa, and contains no foreign material. The cervical spine is structurally intact.

## MUSCULOSKELETAL SYSTEM:

The musculoskeletal system is well developed and free of deformity. There are no fractures of the clavicles, sternum, ribs, vertebrae, or pelvis. The ribs are not brittle. The skeletal muscle is dark red and firm.

## HEAD:

The scalp is reflected in the usual manner revealing congestion within the anterior scalp overlying the frontal region but no hemorrhage. The calvarium and base of skull are normally configured and have no fractures. The dura is intact, and there is no epidural or subdural hemorrhage.

## NERVOUS SYSTEM:

The unfixed brain weighs 1360 grams. The leptomeninges are glistening and transparent without underlying hemorrhage, exudate, or cortical contusions. The hemispheres are symmetrical and have a normal gyral pattern. There is no flattening of the gyri, narrowing of the sulci, midline shift, or evidence of herniation. The arteries at the base of the brain have no atherosclerotic changes and no aneurysms. Sections through the cerebral hemispheres have a uniform, intact cortical ribbon and uniform white matter. The basal ganglia, thalami, hippocampi, and other internal structures are symmetrical and without focal change. The ventricles are not enlarged, and the linings are smooth and glistening. Sections of the brainstem and cerebellum reveal no localized hemorrhages, masses, or lesions.

**SPECIMENS RETAINED**

## TOXICOLOGY:

Samples of peripheral blood, urine, liver, and vitreous humor are collected and retained. The samples of peripheral blood are submitted for Toxicology.

## HISTOLOGY:

Representative sections of organs and tissues are retained. Sections of the heart, right lung, left lung, liver, cerebellum, skin from the possible probe barb site of the abdomen, right sternocleidomastoid muscle, and kidney are submitted for histology.

Cassette summary:

| | |
|---|---|
| Cassette 1: | Heart (interventricular septum and right ventricle). |
| Cassette 2: | Heart (left ventricle), liver, right kidney. |
| Cassette 3: | Right lung. |
| Cassette 4: | Left lung, skin from abdomen. |
| Cassette 5: | Cerebellum. |

Decedent: Herman Whitfield III                                              Case: 22-1635

Cassette 6:     Right sternocleidomastoid muscle.

RADIOGRAPHS:

None.

EVIDENCE:

Pulled head hair, a blood tube, a blood card, fingernail swabs, the paper evidence bags from the hands, the copper wire from right shoulder, the copper wire from between the legs, and the barbed dart from abdomen are collected and retained as evidence by the Crime Lab.

## MICROSCOPIC DESCRIPTION

HEART:  One section of right ventricle is unremarkable.  Two sections of left ventricle/interventricular septum demonstrate enlargement of cardiomyocyte nuclei, focal mild perivascular fibrosis, and focal capillary congestion.

RIGHT LUNG:  Three sections demonstrate vascular congestion and numerous extravasated red blood cells within airspaces.

LEFT LUNG:  Two sections demonstrate vascular congestion and numerous extravasated red blood cells within airspaces.

LIVER:  One section demonstrates moderate to marked primarily macrovesicular steatosis with mild portal fibrosis, moderate periportal chronic inflammatory cell infiltrate, and sinusoidal congestion.

KIDNEY:  One section demonstrates autolysis of tubules and rare sclerotic glomeruli.

BRAIN: One section of cerebellum is unremarkable.

SKIN FROM ABDOMEN (POSSIBLE PROBE BARB SITE):  One section of skin is unremarkable.  No hemorrahge is present.

RIGHT STERNOCLEIDOMASTOID MUSCLE: Two sections of muscle demonstrate acute intramuscular hemorrahge.

## SUMMARY AND INTERPRETATION

According to the information received, on the early morning hours of April 25, 2022, 911 was called from the home of this 39-year-old man.  His parents reportedly called to request an ambulance for their son who was reportedly acting erratic.  Upon first responders' arrival, law enforcement personnel entered the front door of the residence and attempted to speak to Mr. Whitfield, III.  He was nude and pacing in the back of the residence.  Over the course of several minutes multiple officers entered the residence.  At one point a family member(s) went into a back bedroom with him to attempt to get him dressed.  Shortly after he quickly exited the bedroom and entered the kitchen of the home.  He then quickly entered the living room of the residence where an officer deployed a conducted electrical weapon (CEW) that appeared to strike Mr.

Whitfield III in the torso. He fell to the ground knocking over multiple items from an adjacent table and became entangled in a tablecloth but continued to struggle. Multiple officers then approached him and attempted to subdue him. He was placed into a prone position (lying on stomach) and multiple officers attempted to restrain him using handcuffs. He then became unresponsive. Medics were called into the home and resuscitative efforts were started and continued for several minutes. He was then transported to a local Hospital where his death was pronounced shortly after arrival. He had no reported mental health diagnoses. He had a history of hypertension, obesity, and hypertriglyceridemia. Recovered from within his room were three empty packages labeled as being Delta-9 THC gummies (varying brands and flavors). Jurisdiction was accepted by the Marion County Coroner's Office.

Video footage of the incident, provided by law enforcement (consisting of footage from six bodycams) was reviewed by this pathologist (Comment: In the following paragraph I will be referencing certain times that events occurred during the obtained videos. Time stamps were not apparent on the provided recordings so the time used below is based off the individual video recording times and thus might vary slightly from video to video. Therefore, the below stated reference times are an approximation and should be treated as such).

The reviewed videos show multiple law enforcement officers arriving at the home and attempting to make verbal contact with Mr. Whitfield III. Mr. Whitfield III is acting erratic and pacing nude in the back of the home and only slightly responding verbally to the officers' questions. After approximately 5 to 6 minutes a couple of officers enter farther into the home. An officer walks down the hallway and attempts to verbally communicate with Mr. Whitfield III. At one point this officer makes a comment that Mr. Whitfield III's mouth is bleeding (no physical altercation with law enforcement had occurred at this point). Mr. Whitfield III then enters a back bedroom. His family attempts to give him clothing to put on. A few minutes later (approximately 10 – 11 minutes after officers' arrival to the home) Mr. Whitfield III quickly exits the back bedroom and enters the kitchen. Based off audio from the footage objects can be heard breaking in the kitchen. Mr. Whitfield III is instructed to "put it down" and to "stop picking stuff up". He quickly turns the corner and enters the living room where an officer discharges a conducted electrical weapon (CEW). The probes from the device appear to strike Mr. Whitfield III in his torso. Mr. Whitfield III collapses to the ground during which time multiple objects are knocked off a nearby table. He becomes entangled in a tablecloth but continues to struggle. Multiple officers then attempt to restrain Mr. Whitfield III. They place him in a prone position (lying on stomach) and attempt to put his arms behind his back and place him in handcuff restraints. During this restraint period Mr. Whitfield III continues to move/struggle and is heard speaking/mumbling. Approximately 31 seconds later, Mr. Whitfield III appears to state "I can't breathe" at least once while in the prone position. Officers continue to attempt to secure the handcuffs behind his back. Approximately 37 seconds later Mr. Whitfield III appears to become unresponsive as there is no evidence of voluntary movement or verbal communication (Comment: This time point is approximately 1 minute and 22 seconds following the deployment of the conducted electrical weapon). Approximately 20 seconds later the handcuffs are secured and an officer(s) state "Locked up". EMS is then immediately requested to enter the residence (EMS personnel were reportedly waiting outside the residence). Approximately 3 minutes later EMS personnel arrive at Mr. Whitfield III. When they approach, he is unresponsive, prone/semi-prone, and restrained. Mr. Whitfield III is then rolled over and the handcuffs are removed. Resuscitative efforts begin and continue for approximately 13 minutes. He is then placed on a stretcher and taken outside. Due to the scene environment (dark home and close quarters) portions of the videos are difficult to fully visualize/interpret. No definitive neck compression can be seen on the video by this pathologist, including chokeholds or strangleholds.

A review of the EMS report indicates that Mr. Whitfield III was in asystole during the entire attempted resuscitation period.  EMS personnel noted that his skin was diaphoretic.  No body temperature was obtained at this time.

The autopsy documented a morbidly obese man with an abrasion on the left side of the forehead, a laceration of the right side of the lower lip, and scattered abrasions and superficial lacerations of the torso.  A single barbed probe, from a conducted electrical weapon, was lodged within the skin and subcutaneous tissue of the left side of the abdomen.  A second probe was not found at autopsy and no definitive cutaneous injury associated with a second barb was identified.  There were contusions of the left forearm and wrist and underlying subcutaneous tissue hemorrhage of the bilateral wrists, consistent with the use of handcuff restraints.  There were abrasions on the left knee and subcutaneous hemorrhage within the left ankle without associated external injury.  Internal examination of the neck revealed hemorrhage within the right sternocleidomastoid muscle, at the attachment side to the clavicle, and focal hemorrhage of the base of the left side of the neck at the region of the left clavicle of uncertain etiology or significance.  There were no fractures of the hyoid bone or thyroid cartilage.  Natural disease consisted of an enlarged and hypertrophied heart consistent with his history of hypertension.  Microscopically there was evidence of hepatic steatosis (fatty change of the liver).

Toxicological testing of his blood detected cannabinoids (marijuana) including Delta-9-THC (12.1 ng/ml) and TCH-COOH (142 ng/ml).  No alcohol, other drugs, or selected medications were detected.  No synthetic cannabinoids were detected.  The Delta-9 THC detected in his system is consistent with empty packages of Delta-9 THC gummies found in his room.  Additional testing of the contents of the packages of gummies, performed by the State laboratory, detected Delta-9 THC in one of the packages.  No other substances were reportedly detected.

A vitreous electrolyte panel was non-contributory.

Based on the autopsy findings, review of provided video, and the circumstances surrounding the death, as currently understood, the cause of death is cardiopulmonary arrest in the setting of law enforcement subdual, prone restraint, and conducted electrical weapon use.  Morbid obesity and hypertensive cardiovascular disease are listed as contributing conditions.

As his death occurred during a physical prone restraint, and this restraint played a role in his death, the manner of death is listed as homicide.

ZO

**This case was peer reviewed at the Pathologist's Conference on 7/14/2022.**

**Note:  Representative samples of body fluids, specimens and glass tubes and/or stock wet tissue sections in formalin, if any, will be retained for one year and then discarded, unless requested otherwise.  Blood spot cards, histologic paraffin blocks and microscopic slides, if any, will be retained indefinitely.**



| Laboratory Case Number: | 3244000 | | Subject's Name: | WHITFIELD III, HERMAN |
|---|---|---|---|---|

**Client Account:** 11050 / MACC02

**Report To:** Marion County IN Coroner
ATTN: Marion County Coroner
521 W. McCarty St.
Indianapolis, IN 46225
FX: 317-327-5798

**Agency Case #:** MC-22-1635
**Date of Death:** 04/25/2022
**Test Reason:** Not Given
**Investigator:** DEPT GRANNAN
**Date Received:** 04/27/2022
**Date Reported:** 05/19/2022

**Laboratory Specimen No:** 41007367
**Container(s):** 01:GRT   Blood,FEMORAL

**Date Collected:** 04/26/2022 08:50
**Test(s):** 70575   ISDH Panel, Blood

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| VOLATILES | Negative | | | | | |
| Methanol | Negative | | | | | |
| Ethanol | Negative | | | | | |
| Acetone | Negative | | | | | |
| Isopropanol | Negative | | | | | |
| AMPHETAMINES | Negative | | | | | |
| ANALGESICS | Negative | | | | | |
| ANESTHETICS | Negative | | | | | |
| ANTICHOLINERGICS | Negative | | | | | |
| ANTICONVULSANTS | Negative | | | | | |
| ANTIDEPRESSANTS | Negative | | | | | |
| ANTIDIABETICS | Negative | | | | | |
| ANTIFUNGALS | Negative | | | | | |
| ANTIHISTAMINES | Negative | | | | | |
| ANTIPSYCHOTICS | Negative | | | | | |
| BARBITURATES | Negative | | | | | |
| BENZODIAZEPINES | Negative | | | | | |
| CANNABINOIDS | POSITIVE | | | | | |
| Delta-9-THC | POSITIVE | 12.1 | 1 | | ng/mL | |
| THC-COOH | POSITIVE | 142 | 3 | | ng/mL | |
| CARDIOVASCULARS | Negative | | | | | |

**WHITFIELD III, HERMAN**
**Laboratory Case #: 3244000**
**Printed Date/Time: 05/19/2022, 09:19**



FORENSIC TOXICOLOGY

Laboratory Specimen No:        41007367                        Continued..

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| DESIGNER OPIOIDS | Negative | | | | | |
| GASTROINTESTINALS | Negative | | | | | |
| HALLUCINOGENS | Negative | | | | | |
| MISCELLANEOUS | Negative | | | | | |
| MUSCLE RELAXANTS | Negative | | | | | |
| NOVEL PSYCHOACTIVES | Negative | | | | | |
| OPIOID ANALGESICS | Negative | | | | | |
| SEDATIVE/HYPNOTICS | Negative | | | | | |
| STIMULANTS | Negative | | | | | |
| SYNTHETIC CANNABINOIDS | Negative | | | | | |
| UROLOGICALS | Negative | | | | | |

Specimens will be kept for at least one year from the date of initial report.

WHITFIELD III, HERMAN
Laboratory Case #: 3244000
Printed Date/Time: 05/19/2022, 09:19



**FORENSIC TOXICOLOGY**

| | | | | |
|---|---|---|---|---|
| **Laboratory Specimen No:** | 41007368 | **Date Collected:** | 04/26/2022 08:50 | |
| **Container(s):** 01:RTT | Vitreous,EYE | **Test(s):** | 32400 | Electrolyte Panel, Vitreous |
| | | | 49901 | Volatiles Not Performed |

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| Sodium | | 150 | | | mEq/L | (1) |
| Potassium | | >9.0 | | | mEq/L | (1) |
| Chloride | | 131 | | | mEq/L | (1) |
| Glucose | | 38 | | | mg/dL | (1) |
| Urea Nitrogen | | 17 | | | mg/dL | (1) |
| Creatinine | | 1.0 | | | mg/dL | (1) |

< Volatile Testing Not Performed   >

Due to negative blood, tissue, and/or urine volatile (Acetone, Ethanol, Isopropanol, and Methanol) results, volatile testing was not performed on the vitreous specimen.

Performing Location(s):

(1)   Ascertain Forensics
3650 Westwind Blvd, Santa Rosa, CA  95403
Medical Director: Laureen J. Marinetti, Ph.D.,F-ABFT

**WHITFIELD III, HERMAN**
**Laboratory Case #: 3244000**
**Printed Date/Time: 05/19/2022, 09:19**



FORENSIC TOXICOLOGY

Testing Report
Web: www.axisfortox.com
Phone: (317) 759-4TOX

| Laboratory Specimen No: | 41007369 | | Date Collected: | 04/26/2022 08:50 |
|---|---|---|---|---|
| Container(s): 01:GRT | Blood,FEMORAL | | Test(s): 49900 | Not Tested |

| Analyte Name | Qualitative Result | Quantitative Result | Reporting Limit | Reference Range | Units | Note |
|---|---|---|---|---|---|---|
| < No Testing Performed | > | | | | | |

---

The Specimen identified by the Laboratory Specimen Number has been handled and analyzed in accordance with all applicable requirements.

| Laboratory Director | WHITFIELD III, HERMAN | Case Reviewer |
|---|---|---|
| George S. Behonick, Ph.D., F-ABFT | Laboratory Case #:3244000 |  |
| | Print Date/Time:05/19/2022, 09:19 | FORENSIC TOXICOLOGY |